Michael H. Artan (State Bar No. 97393)
One Wilshire Boulevard, Suite 2200
Los Angeles, California 90017
Tele:  213/688-0370 Fax: 213/627-9201
Email: michaelartan@yahoo.com

Glen T. Jonas (State Bar No. 166038)
Jonas & Driscoll
1108 Sartori Avenue, Suite 320
Torrance, CA 90501
Tele: 213/683-2033 Fax: 310/218-4980
Email: glenjonas@aol.com

*Counsel for Defendant*
*Serge Obukhoff*

# UNITED STATES DISTRICT COURT,

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DISTRICT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>SERGE OBUKHOFF,<br><br>        Defendant.<br>_____/ | Case No.: 8:18-cr-00140-JLS<br><br>**MOTION FOR MODIFICATION OF COVID RELATED TRIAL PROTOCOLS, OR IN THE ALTERNATIVE, CONTINUANCE OF TRIAL**<br><br>Date and Time: To Be Determined<br>Before the Honorable Josephine L. Staton<br>United States District Judge |

**TO THE CLERK OF COURT, PARTIES AND COUNSEL:**

**THIS IS NOTICE,** on a date and time to be set by the Court, Defendant Serge Obukhoff, by his counsel, will move the Court for orders relaxing the current COVID protocols, or in the alternative, to continue trial until a point at which the

COVID protocols can be relaxed in a manner described in the attached points and authorities.

This application is based on the record of this case, the points and authorities below, the Declaration of Michael H. Artan, below, as well as additional argument, evidence and authority the court accepts.

The parties sought to reach agreement as to the matters at hand, but were unable to do so. Also, the government stated it had no objection to an order shortening time to allow these issues to be resolved well prior to the current trial date. *See* Declaration of Michael H. Artan, ¶¶ 3-4.

Respectfully submitted,

Dated:  June 4, 2021                                /s/ Michael H. Artan

_____

Michael H. Artan
*Counsel for Defendant*
*Serge Obukhoff*

## POINTS AND AUTHORITIES IN SUPPORT OF MODIFICATION OF COVID RELATED TRIAL PROTOCOLS, OR IN THE ALTERNATIVE, CONTINUANCE OF TRIAL

### I.     INTRODUCTION

Defendant Serge Obukhoff respectfully seeks to have his July 27, 2021 trial free of the constraints presently contemplated by the suggested trial protocols for the Central District of California, found in a document entitled Conducting Jury Trials During the COVID-19 Pandemic ("the Protocols").[1] If the Protocols must be in place for the current trial date, the defense seeks continuance of trial until a point when trial can proceed within reasonably normal procedures.

Section II of the Protocols recommend that the Court hold a pretrial conference to review the safety measures to be taken during trial. Particularly, the Protocols suggest that the Court, "obtain consent on the record or have the parties brief any objections prior to trial." In accordance with this guidance, the defense files this brief outlining its objections, and seeking continuance in the alternative.

### II.     COVID TRIALS ARE UNCHARTED TERRITORY

Decades, if not centuries, of criminal jurisprudence are now being reconfigured to account for the dangers of COVID. Simply put, trials proceeding under the current protocols cannot be trusted based on any analytical approach. There are simply no studies the Court can draw upon to determine how a COVID trial impacts the jury.  While some defendants may decide to risk going forward in the face of such concerns—perhaps because they are in custody or other reasons, defendants who doubt the propriety of these procedures should not be forced to trial.

---

[1] The Protocols are available to the public on the Court's website.

The defense is deeply concerned as to the social and psychological impact the Protocols will have on the jury.  The general message is as follows: "You are commanded to appear in court to do your civic duty. However, you are being placed in a closed room environment that presents a danger to your health and possibly your life. To lower the probability of endangering your health/life, we have implemented safety measures, but we cannot guarantee your safety."

To be clear, the Defendant is willing to enter a time waiver.  The government sought and attained two six-month extensions to toll indictment, delaying prosecution for over one year.  The defendant's life, his future, his freedom, and his professional career depends on the jurors getting it right. Due process was carved from an evolving trial process that has now been unchanged for centuries.

If the defendant were asserting his speedy trial rights, then there may be little choice other than to press forward with a compromised proceeding. Here, the Defendant, faced with the choice of tinkering with the jury trial process to his detriment versus continuing the trial with a time waiver, chooses continuing the trial with a time waiver.

## III.    FACTS RELEVANT TO THIS APPLICATION

### A. The Current Trial Date

The defense agreed to the current trial date with some hope that the procedures to be in place would be freer and less onerous than currently contemplated. Admittedly, there was no guarantee as to these procedures when the upcoming date was agreed upon. But the challenges of these procedures became better known to the defense because undersigned counsel was co-counsel in a March 2021 three-week federal criminal jury trial in the Southern District of New York which utilized similar protocols. Once theory was put in practice, it was

apparent to undersigned counsel that a trial under these circumstances should be avoided if possible.[2]

### B. Other Facts Relevant to this Application

#### 1. The Government Twice Received Statute of Limitations Waivers

As to the government's interest in proceeding soon, on June 19, 2017 and on November 14, 2017, Dr. Obukhoff agreed to statute of limitations extensions totaling thirteen months.

#### 2. The Defense Agreed to a Rule 15 Deposition of Jacob Tauber and the Deposition Was Completed

Based on health concerns, the defense agreed to the government's request to hold a Rule 15 deposition of witness (co-defendant) Dr. Jacob Tauber; the Court ordered the deposition. At the time of the deposition, Dr. Tauber was able to proceed with his remote video-recorded testimony on February 19, 2021.[3] Dr. Tauber was cogent and alert during the entire deposition, which lasted from 9:35 AM to 4:56 PM; he reported being in chemotherapy treatment that should last "a couple more years."[4]

#### 3. There are no Other Witness or Evidentiary Issues Arising from a Continuance Known to the Defense

The defense is unaware of any other witness availability issue, or evidentiary issue which would arise from a continuance.

---

[2] As to the two defendants in the SDNY trial, one was in custody and the other on house arrest.

[3] The deposition involved the remote presence of six lawyers, the witness and Defendant, from eight locations in four states.

[4] Tauber Deposition, February 19, 2021, 120:3-4

## IV.   OBJECTIONS TO THE PROTOCOLS

As stated above, the defense has a general concern as to proceeding with a trial under the shadow of COVID, a review of the particular aspects of the Protocols give insight into the drawbacks of conducting a compromised jury trial:

1.  Juror Seating

Pursuant to the Protocols, it is mandatory that the Court implement either Option "A" or Option "B" for jury seating.  Option A leaves 4 jurors in the jury box, and the remaining jurors spread out on both sides of the gallery. Option B leaves them spread out through the gallery.

Objection: Jurors' observations of the live witness will be obstructed or at an unreasonable distance.  Some will see the witness live, while others will be dependent on a television monitor.  This increases the probability that jurors will have differing abilities and perception experiences based on their seat assignment to observe the witnesses' non-verbal cues.  While jurors have differing abilities in this regard under normal circumstances, this layout increases the probability that a juror will miss cues, develop screen fatigue, or otherwise have differing witness perception experiences based on where they are in the courtroom.  Cases are determined on the differing vantage points of actual witnesses to a crime.  It is predictable that jurors will receive and process information differently based on their spread-out seat locations in the courtroom.

Trials are normally conducted with the jury sitting in a box close to the witness chair precisely because they need to be close to the witness.  Assessing truth is not based solely on the words spoken. Assessing truth is based on mannerisms, breathing patterns, speech patterns, and a variety of nonverbal factors. [*See Ninth Circuit Model Jury Instruction 1.14;* Jurors may take into account, "3. the witness's manner while testifying."]

Having jurors fifty feet from a witness or staring at a screen damages jurors' ability to make those assessments. Such a gap whether by physical distance or by

staring at a monitor creates a barrier that directly and negatively impacts jurors' crucial duties during trial.

### 2. Mandatory Face Covering

The Protocols require everyone but testifying witnesses to wear masks.

Objection: It will be difficult if not impossible to assess the jurors' reactions during the trial testimony.  If they are wearing masks, then it will be impossible. The issue is compounded by the manner in which jurors are spread out in the gallery and the jury box, leaving no ability for counsel, or co-counsel, to make observations of the jury simultaneously.  Part of deciding trial strategy is gauging a jury. The social distancing and masks hamper an already difficult task.

Additionally, the questioning lawyer—*being masked*, would be unable to adequately communicate with the witness, and the jury would be unable to determine the interplay of the questioner and witness. This interplay is part of communication.[5]

Likewise, for the reasons described above, attorneys who address the jury, such as in opening statements and summations, must be allowed to speak mask-free to the jury.

As to face-shields, they do not give a clear view of someone speaking. To the contrary, it invites people to look away; plexiglass barriers for the witness and questioning lawyer are favorable.

### 3. Juror Notebooks and Pens

The jurors will use plastic bags to hold their notebooks and pens during trial.

Objection:  It is unclear from the Protocols whether the jurors' notes will be allowed into the jury room for deliberations. If the jurors are not allowed to use their notes during deliberations, the defense objects, as this case involves

---

[5] The SDNY trial referred to previously allowed the questioning lawyers to not wear masks. [*United States v. Weigand;* SDNY Case Number 1:20-cr-00188-JSR.]

complicated issues, and lengthy testimony. Jurors should be allowed to use their notes.

### 4. Sidebar Discussions

The COVID-19 Trial Protocols recommend avoiding sidebar discussions.

Objection: If sidebar discussions are warranted, artificial factors should not influence whether sidebars occur. Sidebar discussions are often necessary to avoid mistrial and to protect a defendant's constitutional right to a fair trial.

### 5. Physical Distancing

Physical distancing is called for in virtually all circumstances.

Objection: The issue as it pertains to counsel and client seems unclear in the Protocols. Counsel and their clients must be allowed to sit together and not physically distance themselves from each other.  Defense Counsel would insist on being able to sit together and with their client so that they may confer without further impediments.

As to jurors, they would be required to socially distance during jury deliberations. This again sends the message that they are unsafe and that his trial has endangered their lives. More to the point, recognizing that their health is at risk, they will be tempted to rush deliberations.

## V.     THE PROTOCOLS ACCOUNT FOR A DEFENDANT'S RIGHT TO CONSENT—OR NOT CONSENT

In Section II, the Protocols recommend that the Court hold a pretrial conference to review the safety measures to be utilized during trial. Specifically, the Protocols recommend that the Court, "obtain consent on the record or have the parties brief any objections prior to trial."

## VI.    THIS COURT IS EMPOWERED TO CONTROL ITS CALENDAR.

It is a "well-settled principle that a district court has broad discretion to manage its own calendar." *United States v. Batiste,* 868 F.2d 1089 (9th Cir. 1989).

## VII.   CONCLUSION

A trial is an arduous process with innumerable variables where the result may re-direct a defendant's life forever. A defendant's freedom relies on a process crafted to afford due process.  A trial conducted during a pandemic is a compromised process that should be reserved for those insisting on going to trial despite the apparent risks.

The government refusal to continue trial due to timeliness issues were of little concern when they sought and attained extensions to indict totaling thirteen months. The government should not now be allowed to object if a continuance is sought.

Many of us have lost loved ones, or contracted COVID ourselves making the danger not an amorphous concept but rather a terrorizing reality.  The jurors, witnesses, court-staff and counsel need not be exposed to a potential strain that the vaccine may or not guard against while trying to concentrate on the onerous task of seeking truth and justice.

Finally, this process carries a high risk of mistrial. If the government persists in their refusal to agree to a continuance and this Trial Court sides with the government the defense will be asserting double jeopardy if a mistrial were to occur.

For the above reasons, defendant Serge Obukhoff seeks orders modifying the Protocols, or in the alternative, continuance of trial until a point these modifications can be instituted.

Respectfully submitted,

Dated:  June 4, 2021                    /s/ Michael H. Artan

_____

Michael H. Artan
*Counsel for Defendant*
*Serge Obukhoff*

# DECLARATION OF MICHAEL H. ARTAN
## IN SUPPORT OF APPLICATION

I, Michael H. Artan, declare:

1.     I am counsel for the defendant Serge Obukhoff in this case. I make this declaration in support of the above motion for orders modifying the Protocols, or in the alternative, continuance of trial until a point these modifications can be instituted. Unless otherwise stated, I have personal knowledge of the matters set forth below.

2.     This matter is set for trial on July 27, 2021.

3.     On May 26, 2021, my co-counsel Glen Jonas, Kevin Cauley, and I, had a conference call with counsel for the government, Joseph McNally and Jeff Mitchell, regarding defense objections to the COVID-19 Trial Protocol. We informed the government of our objections generally and specifically regarding the COVID-19 Trial Protocol. We stated that our client would waive time and request a continuance of trial if the protocols were to still be in place by the time of our trial. As I had personally tried a COVID protocol trial in the Southern District of New York in March of this year, I voiced my concerns about the difficulties and areas of unfairness arising from the COVID protocols. The government's counsel said they would discuss the issue and let us know their position.

4.     On Friday night, May 28, 2021, I received an email stating the government would not agree to a continuance and the defense could receive a fair trial under the circumstances. Additionally, Mr. McNally stated the government does not object to an order shortening time should we bring a motion.

5.     On June 19, 2017 and on November 14, 2017, Dr. Obukhoff agreed to statute of limitations extensions totaling thirteen months.

6.     Based on health concerns, the defense agreed to the government's request to hold a Rule 15 deposition of witness (co-defendant) Dr. Jacob Tauber; the Court ordered the deposition. At the time of the deposition, Dr. Tauber was

able to proceed with his remote video-recorded testimony on February 19, 2021.[6] Dr. Tauber was cogent and alert during the entire deposition, which lasted from 9:35 AM to 4:56 PM; he reported being in chemotherapy treatment that should last "a couple more years."[7]

7.    The defense is unaware of any other witness availability issue, or evidentiary issue which would arise from a continuance.

8.    The defense agreed to the current trial date with some hope that the procedures to be in place would be freer and less onerous than currently contemplated. Admittedly, there was no guarantee as to these procedures when the upcoming date was agreed upon. But the challenges of these procedures became better known to the defense because I was co-counsel in a March 2021 three-week federal criminal jury trial in the Southern District of New York which utilized similar protocols. [*United States v. Weigand;* SDNY Case Number 1:20-cr-00188-JSR.] Once theory was put in practice, it was apparent to undersigned counsel that a trial under these circumstances should be avoided if possible.[8]

I declare under penalty of perjury that the above is true and correct and that this declaration is executed at Los Angeles, California, on June 4, 2021.


/s/ Michael H. Artan

_____

Michael H. Artan

---

[6] The deposition involved the remote presence of six lawyers, the witness and Defendant, from eight locations in four states.

[7] Tauber Deposition, February 19, 2021, 120:3-4

[8] As to the two defendants in the SDNY trial, one was in custody and the other on house arrest.