TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JOSEPH T. MCNALLY (Cal. Bar No. 250289)
JEFF MITCHELL (Cal. Bar No. 236225)
SCOTT D. TENLEY (Cal. Bar No. 298911)
Assistant United States Attorney
    Ronald Reagan Federal Bldg & U.S. Courthouse
    411 West 4th Street, Suite 8000
    Santa Ana, California 92701
    Telephone: (213) 894-2272/0698
    Facsimile: (213) 894-2506
    E-mail:    joseph.mcnally@usdoj.gov
               Jeff.mitchell@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>        v.<br><br>SERGE OBUKHOFF,<br><br>     Defendant. | No. CR 18-140(B)-JLS<br><br>GOVERNMENT'S TRIAL MEMORANDUM<br><br>Trial Date:  July 27, 2021<br>Location:    Courtroom of the<br>              Hon. Josephine L.<br>              Staton |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Joseph McNally and Jeff Mitchell, hereby submits its trial memorandum in the above-captioned case.

//

//

//

     The government reserves the right to submit supplemental trial
memoranda as appropriate before, or during, the trial.

Dated: July 22, 2021               Respectfully submitted,

                                   TRACY L. WILKISON
                                   Acting United States Attorney

                                   SCOTT M. GARRINGER
                                   Assistant United States Attorney
                                   Chief, Criminal Division


                                        /s/
                                   _____
                                   JOSEPH MCNALLY
                                   JEFF MITCHELL
                                   Assistant United States Attorney

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

Table of Contents

TABLE OF AUTHORITIES..............................................iii

TRIAL MEMORANDUM...................................................1

I.   STATUS OF THE CASE...........................................1

     A.   Trial Schedule..........................................1

     B.   Witnesses...............................................1

II.  STATEMENT OF THE CHARGE AGAINST DEFENDANT....................3

III. STATEMENT OF FACTS...........................................3

     A.   Pacific Hospital of Long Beach..........................3

     B.   Hospital A..............................................4

IV.  LEGAL ISSUES RELATED TO THE ELEMENTS OF THE OFFENSES.........5

     A.   Knowledge...............................................5

     B.   Willfully...............................................6

     C.   Scheme to Defraud.......................................6

     D.   Fraudulent Intent.......................................6

     E.   Defenses................................................7

V.   MOTIONS IN LIMINE............................................8

     A.   Government's Motion to Preclude Evidence Re:
          Defendant's Surgical Abilities..........................8

     B.   Defendant's Motion to Preclude Portions of Expert
          Testimony...............................................8

     C.   Government's Application to Compel Discovery.............9

VI.  EVIDENTIARY ISSUES...........................................9

     A.   Stipulations............................................9

     B.   Hearsay................................................10

          1.   Defendant's Statements and Adopted Admissions.....10

          2.   Defendant May Not Introduce His Statements or His
               Co-Conspirators' Statements because they are
               Hearsay...........................................10

i

## TABLE OF CONTENTS (CONTINUED)

DESCRIPTION                                                                    PAGE

       3.   Co-Conspirator Statements...........................12

          *a.*   Statements Made During the Course of the Conspiracy...................................12

          *b.*   Statements Made Before Defendant Joined the Conspiracy...................................13

       4.   Patient Medical Records............................15

  C.  Expert Testimony........................................15

  D.  Summaries Charts and Witnesses..........................16

       1.   Summary Charts....................................17

       2.   Summary Witnesses.................................18

  E.  Authentication and Foundation...........................19

       1.   Fed. R. Evid. 901.................................19

       2.   Written and Electronic Communications..............20

       3.   Business Records..................................21

  F.  Proof of the Content of Documents.......................22

  G.  Cross Examination.......................................24

  H.  Character Evidence......................................25

  I.  Impeachment by Evidence of a Criminal Conviction........26

  J.  Pecuniary Gain.........................................26

VII. CONCLUSION.................................................27

ii

# **TABLE OF AUTHORITIES**

## Federal Cases

Barsky v. United States,
   339 F.2d 180 (9th Cir. 1964) .................................. 17

Bourjaily v. United States,
   483 U.S. 171 (1987) ....................................... 12, 13

Bryan v. United States,
   524 U.S. 184 (1998) ........................................... 6

Bullcoming v. New Mexico,
   564 U.S. 647 (2011) .......................................... 22

Diamond Shamrock Corp. v. Lumbermens Mutual Casualty Co.,
   466 F.2d 722 (7th Cir. 1972) ................................. 19

Irwin v. United States,
   338 F.2d 770 (9th Cir. 1964) .................................. 6

Lorraine v. Markel Am. Ins. Co.,
   241 F.R.D. 534 (D. Md. 2007) ................................. 20

Melendez-Diaz v. Massachusetts,
   557 U.S. 305 (2009) .......................................... 22

Michelson v. United States,
   335 U.S. 469 (1948) ...................................... 25, 26

Tamarin v. Adam Caterers, Inc.,
   13 F.3d 51 (2d Cir. 1993) .................................... 18

United States v. Adamo,
   882 F.2d 1218 (7th Cir. 1989) ................................ 14

United States v. Amrep Corp.,
   545 F.2d 797 (2d Cir. 1976) .............................. 7, 8, 9

United States v. Anderson,
   532 F.2d 1218 (9th Cir. 1976) ................................ 14

United States v. Arbelaez,
   719 F.2d 1453 (9th Cir. 1983) ................................ 13

United States v. Awad,
   551 F.3d 930 (9th Cir. 2009) .................................. 6

United States v. Bennett,
   363 F.3d 947 (9th Cir. 2004) ................................. 22

United States v. Black,
   767 F.2d 1334 (9th Cir. 1985) ........................ 19, 20, 24

United States v. Booth,
   309 F.3d 566 (9th Cir. 2002) ................................. 27

United States v. Branch,
   91 F.3d 699 (5th Cir. 1996) .................................. 12

United States v. Burreson,
   643 F.2d 1344 (9th Cir. 1981) ................................ 11

United States v. Carrillo,
   16 F.3d 1046 (9th Cir. 1994) ................................. 10

United States v. Caswell,
   825 F.2d 1228 (8th Cir. 1987) ................................ 18

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                          PAGE

United States v. Chu Kong Yin,
  935 F.2d 990 (9th Cir. 1991) ...................................... 19
United States v. Coe,
  718 F.2d 830 (7th Cir. 1983) ...................................... 15
United States v. Collicott,
  92 F.3d 973 (9th Cir. 1996) ....................................... 11
United States v. Cuevas,
  847 F.2d 1417 (9th Cir. 1988) ..................................... 15
United States v. Cunningham,
  194 F.3d 1186 (11th Cir. 1999) .................................... 11
United States v. Cuozzo,
  962 F.2d 945 (9th Cir. 1992) ...................................... 24
United States v. De Peri,
  778 F.2d 963 (3d Cir. 1985) ....................................... 18
United States v. Diaz-Lopez,
  625 F.3d 1198 (9th Cir. 2010) ..................................... 22
United States v. DiCesare,
  765 F.2d 890 (9th Cir. 1985) ...................................... 14
United States v. Gallego,
  276 F.2d 914 (9th Cir. 1960) ...................................... 10
United States v. Fernandez,
  839 F.2d 639 (9th Cir. 1988) ...................................... 10
United States v. Gardner,
  611 F.2d 770 (9th Cir. 1980) ...................................... 18
United States v. George,
  960 F.2d 97 (9th Cir. 1992) ....................................... 13
United States v. Green,
  745 F.2d 1205 (9th Cir. 1984) ...................................... 6
United States v. Gross,
  370 F. Supp. 3d 1139 (C.D. Cal. 2019) ............................. 7
United States v. Handlin,
  366 F.3d 584 (7th Cir. 2004) ...................................... 15
United States v. Hearst,
  563 F.2d 1331 (9th Cir. 1977) ..................................... 24
United States v. Heredia,
  483 F.3d 913 (9th Cir. 2007) .................................... 5, 6
United States v. Johnson,
  594 F.2d 1253 (9th Cir. 1979) ..................................... 17
United States v. Jones,
  425 F.2d 1048 (9th Cir. 1970) ..................................... 7
United States v. Kellar,
  394 F. App'x 158 (5th Cir. 2010) ................................. 23
United States v. Kenny,
  645 F.2d 1323 (9th Cir. 1981) ..................................... 13

iv

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                         <u>PAGE</u>

<u>United States v. Kincaid-Chauncey</u>,
   556 F.3d 923 (9th Cir. 2009) ........................................ 7
<u>United States v. Knigge</u>,
   832 F.2d 1100 (9th Cir. 1987) ...................................... 13
<u>United States v. Layton</u>,
   855 F.2d 1388 (9th Cir. 1988) ...................................... 13
<u>United States v. Lemire</u>,
   720 F.2d 1327 (D.C. Cir. 1983) ..................................... 19
<u>United States v. Little</u>,
   2012 WL 2563796 (N.D. Cal. June 28, 2012) ......................... 14
<u>United States v. Marin</u>,
   669 F.2d 73 (2d Cir. 1982) ......................................... 12
<u>United States v. McCollom</u>,
   664 F.2d 56 (5th Cir. 1981) ........................................ 26
<u>United States v. Meyers</u>,
   847 F.2d 1408 (9th Cir. 1988) ...................................... 17
<u>United States v. Milovanovic</u>,
   678 F.3d 713 (9th Cir. 2012) ........................................ 7
<u>United States v. Miranda-Uriarte</u>,
   649 F.2d 1345 (9th Cir. 1981) ...................................... 24
<u>United States v. Ortega</u>,
   203 F.3d 675 (9th Cir. 2000) ................................... 11, 12
<u>United States v. Radseck</u>,
   718 F.2d 233 (7th Cir. 1983) ....................................... 17
<u>United States v. Rubino</u>,
   431 F.2d 284 (6th Cir. 1970) ....................................... 18
<u>United States v. Saniti</u>,
   604 F.2d 603 (9th Cir. 1979) ....................................... 27
<u>United States v. Schmit</u>,
   881 F.2d 608 (9th Cir. 1989) ....................................... 13
<u>United States v. Segura-Gallegos</u>,
   41 F.3d 1266 (9th Cir. 1994) ....................................... 14
<u>United States v. Shirley</u>,
   884 F.2d 1130 (9th Cir. 1989) ...................................... 18
<u>United States v. Siddiqui</u>,
   235 F.3d 1318 (11th Cir. 2000) ................................. 20, 21
<u>United States v. Silverman</u>,
   449 F.2d 1341 (2d Cir. 1971) ....................................... 17
<u>United States v. Smith</u>,
   893 F.2d 1573 (9th Cir. 1990) ................................. 13, 20
<u>United States v. Soulard</u>,
   730 F.2d 1292 (9th Cir. 1984) ...................................... 19
<u>United States v. Taylor</u>,
   716 F.2d 701 (9th Cir. 1983) ....................................... 20

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                      PAGE

United States v. Utz,
  886 F.2d 1148 (9th Cir. 1989) ....................................... 6
United States v. Williams,
  441 F.3d 716 (9th Cir. 2006) ........................................ 7
United States v. Willis,
  759 F.2d 1486 (11th Cir. 1985) ..................................... 11
Williamson v. United States,
  512 U.S. 594 (1994) ................................................ 11

Federal Statutes

18 U.S.C. § 371.......................................................... 3
18 U.S.C. § 1346......................................................... 6
18 U.S.C. § 1347(b)...................................................... 6
18 U.S.C. § 1952(a)(3)................................................... 3
18 U.S.C. § 1343......................................................... 3
42 U.S.C. § 1320a-7b(b).................................................. 3

Federal Rules

Fed. R. Crim. P. 16(b)(1)(A)............................................ 9
Fed. R. Evid. 405(a)................................................... 26
Fed. R. Evid. 611(a)................................................... 17
Fed. R. Evid. 702...................................................... 15
Fed. R. Evid. 703...................................................... 15
Fed. R. Evid. 801(d)(2)................................................ 11
Fed. R. Evid. 801(d)(2)(A)............................................. 10
Fed. R. Evid. 801(d)(2)(C)............................................. 10
Fed. R. Evid. 801(d)(2)(E)......................................... 12, 13
Fed. R. Evid. 803(4)................................................... 15
Fed. R. Evid. 806(A)-(C)............................................... 21
Fed. R. Evid. 901.................................................. ii, 19
Fed. R. Evid. 901(a).............................................. 19, 20
Fed. R. Evid. 901(b)(1)................................................ 20
Fed. R. Evid. 902(11).................................................. 21
Fed. R. Evid. 1002..................................................... 22
Fed. R. Evid. 1003..................................................... 20
Fed. R. Evid. 1006................................................. 16, 18
Fed. R. Evid. 611(b)................................................... 24
Fed. R. Evid. 609(b)(2)................................................ 26

**TRIAL MEMORANDUM**

II.   **STATUS OF THE CASE**

    A.   **Trial Schedule**

Jury trial is set to begin with jury selection on July 27, 2021, at 9:00 a.m.  The government estimates approximately six trial days for its case-in-chief, not including jury selection.  The government anticipates calling approximately 22 witnesses.  Defendant is currently on release pending trial.

    B.   **Witnesses**

The government's witnesses fall into the following categories:

- Employees and executives of Pacific Hospital of Long Beach ("PHLB") who participated in the kickback scheme that paid doctors, including defendant, kickbacks for referring and performing surgeries at PHLB.

- Doctors who performed surgery at PHLB or referred surgeries to other kickback scheme participants who did the surgeries at PHLB.  The doctors were paid under sham contracts that were conditioned on sending surgeries to PHLB.

- Doctors who performed surgery at Hospital A or referred surgeries to other kickback scheme participants who performed the surgeries at Hospital A in exchange for kickbacks.

- Former patients of defendant that were operated on at PHLB and Hospital A.  The former patients will testify that defendant did not advise them that defendant was receiving financial compensation from those hospitals and this information was material to them.

- Employees of private and government-operated insurance programs who paid claims based on surgeries performed by defendant.  These witnesses will testify to the billing processes; the claims submitted by PHLB, Hospital A, and defendant that underpin the charges in this case; and that the insurance companies would have not paid the claims if they were aware that defendant received financial compensation from the hospitals in exchange for his patient referrals.

- Two expert witnesses: (1) A clinical professor of orthopaedic surgery who will testify to physicians' fiduciary obligations to patients and medical ethics; and (2) an attorney who specializes in health care transactions, facility purchases, hospital-physician contracting and alignment, and other issues that are directly related to the government's case-in-chief.

- Two law enforcement witnesses from the United States Postal Service, Office of Inspector General, who will testify regarding a search warrant executed at PHLB and the items seized therefrom; analysis of claims data, and bank records; and miscellaneous other records obtained during the investigation.

- Ministerial witnesses:  Absent stipulations, the government will call witnesses to establish the interstate wires alleged in the indictment, as well as document custodians as needed.

One witness, a cooperating co-defendant, is in custody.  The government has notified the United States Marshal service that the

witness will be needed for trial testimony and will arrange for his appearance.

One witness, a patient, is a native Spanish-speaker who has requested the services of a Spanish-language interpreter.

The parties agreed to exchange mutual witness lists.  On July 19, 2021, the government produced its witness list to defendant.  On July 21, 2021, defendant provided the government a list of four witnesses and four additional potential witnesses; however, neither list included the defendant.  When asked to clarify, counsel declined to indicate whether defendant would testify.

**III.  STATEMENT OF THE CHARGE AGAINST DEFENDANT**

The defendant is charged in the Second Superseding Indictment with 35-counts of violating 18 U.S.C. § 371: Conspiracy; 18 U.S.C. §§ 1341, 1346: Mail Fraud Involving Deprivation of Honest Services; 18 U.S.C. §§ 1343, 1346: Wire Fraud Involving Deprivation of Honest Services; 18 U.S.C. § 1952(a)(3): Use of an Interstate Facility in Aid of Unlawful Activity; 42 U.S.C. § 1320a-7b(b)(1)(A): Soliciting and Receiving Illegal Remunerations for Health Care Referrals.

**IV.  STATEMENT OF FACTS**

Defendant Serge Obukhoff ("defendant") is a neurosurgeon who owed a fiduciary duty to his patients to act in their best interest, not for his own pecuniary or personal gain.  Defendant breached that duty by accepting bribes and kickbacks to steer surgeries to two hospitals.

**A.  Pacific Hospital of Long Beach**

The operator of PHLB, Michael Drobot ("Drobot") paid more than $2 million to defendant in exchange for performing surgeries at Pacific Hospital.  The payments were part of a wide-ranging scheme

3

that went on for decades where Drobot bribed more than a dozen doctors and other medical professionals to steer surgeries to PHLB. The surgeries were valuable to the hospital – often resulting in bills ranging from $40,000-$100,000.  Drobot and the doctors, including defendant, agreed to use sham contracts to disguise the true purpose of the kickback payments and to provide the appearance of legitimacy in case law enforcement began to examine financial ties between Drobot and the physicians.

Defendant's kickbacks were primarily paid under a sham option contract.  Under the written terms of the option contract, Drobot's business entity agreed to pay $50,000 per month for the option of purchasing defendant's medical practice.  Trial witness testimony and documentary evidence will establish that the true purpose of the payments was to incentivize and reward defendant for performing surgeries at PHLB.  Between 2010 and 2013, defendant collected more than $2 million in kickbacks.  Drobot also covered defendant's rent while he worked in other doctors' offices, provided that defendant performed his surgeries at PHLB.  After the kickback scheme was exposed, defendant and Drobot drafted a sham agreement to cover-up Drobot's payment of defendant's rent at a doctor's office. Defendant's medical corporation produced the agreement to the government pursuant to a subpoena.

**B.   Hospital A**

Defendant also received more than $530,000 in kickbacks from Hospital A for surgeries defendant performed from 2009 to 2015. Similar to PHLB, the owner of Hospital A used sham contracts to attempt to legitimize the kickback payments.  Defendant was paid under a sham medical director agreement.  The operator of Hospital A

4

also paid defendant's office rent at doctors' offices.  Defendant

brokered one of the rent kickback agreements with Hospital A after

law enforcement executed a search warrant at PHLB in 2013 and Drobot

stopped paying defendant's rent.

**V.   LEGAL ISSUES RELATED TO THE ELEMENTS OF THE OFFENSES**

     **A.   Knowledge**

A defendant acts knowingly if the defendant is aware of the act

and does not act or does not fail to act through ignorance, mistake,

or accident.  See Ninth Circuit Model Criminal Jury Instruction No.

5.7 (2010 ed.).  In deciding whether a person acted knowingly, the

jury may consider evidence of his words, acts, or omissions, along

with all the other evidence.  Id.  The government has proposed the

Ninth Circuit deliberate ignorance instruction.  A defendant is also

deemed to "know" a particular fact if he (1) was aware of a high

probability of that fact and (2) deliberately avoided learning the

truth.  See Ninth Circuit Model Criminal Jury Instruction No. 5.8

(2010 ed.).  Thus, if a person takes "deliberate actions to avoid

confirming suspicions of criminality," he is deemed to exhibit

"willful blindness" or "deliberate ignorance," and treated equally to

one who has actual knowledge of wrongful conduct.  United States v.

Heredia, 483 F.3d 913, 918 (9th Cir. 2007) (en banc).

For a crime requiring knowledge, actual knowledge and willful

blindness are alternative theories of mens rea.  Heredia, 483 F.3d at

922.  Although the theories are inconsistent, the government may seek

instruction on both.  Id.  The district court must consider each of

the requested instructions separately and "determine if the evidence

could support a verdict on either ground."  Id.  "In deciding whether

to give a willful blindness instruction, in addition to an actual

5

knowledge instruction, the district court must determine whether the jury could rationally find willful blindness even though it has rejected the government's evidence of actual knowledge.  If so, the court may also give a <u>Jewell</u> instruction."  <u>Id.</u>

**B.  Willfully**

A defendant acts willfully if the defendant committed the act voluntarily and purposely, and with knowledge that his conduct was, in a general sense, unlawful.  <u>See</u> 18 U.S.C. § 1347(b); 42 U.S.C. § 1320a-7b(b)(h); Ninth Circuit Model Criminal Jury Instruction No. 5.5 (2010 ed.); <u>Bryan v. United States</u>, 524 U.S. 184, 189-91, 193-96, 198-99 (1998); <u>United States v. Awad</u>, 551 F.3d 930, 937-41 (9th Cir. 2009).

**C.  Scheme to Defraud**

A scheme to defraud includes any plan or course of conduct "reasonably calculated to deceive persons of ordinary prudence and comprehension."  <u>United States v. Green</u>, 745 F.2d 1205, 1207 (9th Cir. 1984); <u>Irwin v. United States</u>, 338 F.2d 770, 773 (9th Cir. 1964) (same).  The government is not required to prove that defendant's scheme was successful, or that he actually caused any victim (i.e., insurance company or patient) to lose money or property.  <u>See United States v. Utz</u>, 886 F.2d 1148, 1151 (9th Cir. 1989).

**D.  Fraudulent Intent**

Intent to defraud is an essential ingredient of any scheme to defraud.  An intent to defraud is an intent to deceive and cheat patients out of their intangible right of honest services.  Ninth Circuit Model Criminal Jury Instructions, No. 5.12 (2015 ed.) [Intent to Defraud] (modified to reflect indictment for 18 U.S.C. § 1346); <u>see also</u> Ninth Circuit Model Criminal Jury Instructions, No. 8.123

6

1  (2015 ed.) [Honest Services Fraud](including an intent to defraud by

2  depriving victim of their "right of honest services").

3      The government is not required to prove that defendant intended

4  to harm or caused actual, tangible harm to his patients, whether

5  physical or economic.  United States v. Gross, 370 F. Supp. 3d 1139,

6  1148 (C.D. Cal. 2019) (Staton, J.)(citing United States v. Williams,

7  441 F.3d 716 (9th Cir. 2006)) ("[T]he Government need not allege (or

8  prove) an intent to harm or actual, tangible harm to the victims of

9  the referrals-for-kickback scheme."); United States v. Milovanovic,

10  678 F.3d 713, 726 (9th Cir. 2012) (monetary loss or economic harm is

11  not a requirement of proof in an honest services case); United States

12  v. Kincaid-Chauncey, 556 F.3d 923, 944 (9th Cir. 2009) ("official has

13  defrauded the public of the official's honest services even though no

14  tangible loss to the public has been shown because the public

15  official deprived the public of its right to honest and faithful

16  government").

17      Fraudulent intent may be, and often must be, shown by

18  circumstantial evidence.  See United States v. Jones (Jones II), 425

19  F.2d 1048, 1058 (9th Cir. 1970).  Because of the difficulty in

20  proving intent, any proof properly connected to a defendant that

21  establishes the manner in which the fraudulent scheme was carried

22  into execution is admissible.  United States v. Amrep Corp. (Amrep

23  I), 545 F.2d 797, 800 (2d Cir. 1976).

24      **E.   Defenses**

25      Defendant has not provided the government with notice of any

26  affirmative defenses.  Defendant has also indicated that he does not

27  have any Rule 16 material that is not contained in the government's

28

discovery production or defendant's medical corporation's production to the government.

## VI.  MOTIONS IN LIMINE

### A.  Government's Motion to Preclude Evidence Re: Defendant's Surgical Abilities

On March 9, 2020, the government filed a Motion in Limine to preclude testimony, evidence, and argument regarding defendant's surgical abilities or the medical necessity of the surgeries.  (CR 104.)  Defendant opposed the motion.  (CR 106.)  On July 16, 2021, the Court granted the government's motion.  (CR 166.)

### B.  Defendant's Motion to Preclude Portions of Expert Testimony

On March 9, 2020, defendant filed a Motion in Limine to Exclude Portions of Expert Testimony.  (CR 103, 109.)  The government opposed the motion.  (CR 107.)  On July 16, 2021, the Court denied defendant's request to exclude expert testimony regarding the "nature of a physician's fiduciary duty or his explanation as to the adverse impacts of kickbacks in the medical industry."  (CR 166.)

The Court also ordered the government not to put on evidence that defendant was a poor surgeon, that the surgeries were unnecessary, or that defendant's patients received unfavorable results.  (Id.)  If the government's expert testifies in a manner that creates an inference that defendant was a poor surgeon or the surgeries performed by defendant were unnecessary, the Court will instruct the jury that there are "no allegations or evidence that Dr. Obukhoff lacked the proper skills as a surgeon, that any surgeries were unnecessary or that his patients received any unfavorable results, and they cannot make that inference from the evidence presented."  (Id.)

8

### C.   Government's Application to Compel Discovery

On July 5, 2021, the government filed an <u>ex parte</u> application to compel defendant to produce reciprocal discovery, as he is obligated to do under Fed. R. Crim. P. 16(b)(1)(A).  (CR 156.)  After defendant filed an opposition, the Court granted the government's motion and ordered defendant to produce by July 9, 2021, all Rule 16(b) discovery in his custody, possession, or control.  (CR 161 at 2.) The Court's Order also advised defendant that his discovery obligation included a responsibility to "identify any material produced by the Government that Defendant intends to use in his case-in-chief."  (<u>Id.</u>)  In response, defendant provided a list of broad categories of documents he may use at trial.  The Court also ordered the government to file an exhibit list by July 13, 2021, and for defendant to file his exhibit list by July 20, 2021, which was later extended to July 21, 2021.

On July 13, 2021, the government filed its exhibit list.  (CR 162.)  On July 21, 2021, defendant filed his exhibit list.  (CR 182.)

## VII. EVIDENTIARY ISSUES

### A.   Stipulations

The parties have stipulated to the authenticity and admissibility of medical and business records obtained from defendant's medical corporation, pursuant to a subpoena.  The signed stipulations are identified in the government's exhibit list as Exhibits 806 and 807.

Although the parties have had several additional discussions regarding stipulations, the parties have not entered into any additional stipulations.  The parties will continue to discuss

stipulations to admit documents, patient testimony, and proof of interstate wires.

**B.    Hearsay**

1.    Defendant's Statements and Adopted Admissions

The government intends to admit statements made by defendant. Statements by a party opponent when offered against that party are excluded from the hearsay definition.  Fed. R. Evid. 801(d)(2)(A). Thus, defendant's statements may be admitted against him.

Statements that defendant adopted or that were made by an agent of defendant on a matter within the scope of that agency relationship are similarly admissible.  Fed. R. Evid. 801(d)(2)(C), (D).  Many of the documents seized during the execution of the search warrant at PHLB and obtained by legal process from defendant's medical practice were reviewed and acted upon by defendant.  These documents all constitute adoptive admissions.  See United States v. Carrillo, 16 F.3d 1046, 1048-49 (9th Cir. 1994) (holding that a document possessed by a defendant is an adopted admission where the defendant takes some step to act on it to demonstrate more than mere possession of the document).  Other documents were created by agents of defendant, including his medical practice and billing companies, were acting within that agency relationship, and so constitute agency admissions.

2.    Defendant May Not Introduce His Statements or His Co-Conspirators' Statements because they are Hearsay

Under the Federal Rules of Evidence, a defendant's statement is admissible only if offered against him; a defendant may not elicit his own prior statements.  See Fed. R. Evid. 801(d)(2)(A); United States v. Fernandez, 839 F.2d 639 (9th Cir. 1988).  To permit otherwise would place a defendant's statements "before the jury

10

without subjecting himself to cross-examination, precisely what the hearsay rule forbids." United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000) (holding that the district court properly barred defendant from seeking to introduce his exculpatory post-arrest statements through cross-examination of an INS agent); United States v. Cunningham, 194 F.3d 1186, 1199 (11th Cir. 1999) ("a defendant cannot attempt to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross examination").

When the government admits some of a defendant's prior statements, the door is not thereby opened to the defendant to put in all of his out-of-court statements, because when offered by the defendant, the statements are hearsay. See Fed. R. Evid. 801(d)(2); United States v. Burreson, 643 F.2d 1344, 1349 (9th Cir. 1981); United States v. Willis, 759 F.2d 1486, 1501 (11th Cir. 1985) (defendant's exculpatory statement inadmissible when offered by defense).

Similarly, a defendant's exculpatory statements are not admissible under Federal Rule of Evidence 106, the "rule of completeness." Evidence that is inadmissible is not made admissible by invocation of the "rule of completeness." See United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996) (hearsay not admissible regardless of Rule 106). As the Ninth Circuit noted in Ortega, a defendant's non-self-inculpatory statements are inadmissible hearsay even if they were made contemporaneously with other self-inculpatory statements. Ortega, 203 F.3d at 682 (citing Williamson v. United States, 512 U.S. 594, 599 (1994)).

The "rule of completeness" may require that all of a defendant's prior statements be admitted only where it is necessary to explain an

11

admitted statement, to place it in context, or to avoid misleading the trier of fact.  See, e.g., United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982).  The doctrine does not, however, require introduction of portions of a statement that are neither explanatory of, nor relevant to, the admitted passages.  See Ortega, 203 F.3d at 682-683; Marin, 669 F.2d at 84.  The burden is on the defendant to identify a basis for admitting the additional portions of the defendant's prior statement.  United States v. Branch, 91 F.3d 699, 729 (5th Cir. 1996).  To date, defendant has not indicated that any of the statements the government wishes to introduce require additional statements under the completeness doctrine.

### 3.   Co-Conspirator Statements

The government will move to admit statements made by co-conspirators made in furtherance of a conspiracy.  The statements include emails between participants in the conspiracy, documents prepared to calculate kickback payments, and oral statements of the participants.  The government will introduce co-conspirator statements made while defendant was a member of the conspiracy, and statements made before defendant joined the conspirator.  Both are admissible.

#### a.   *Statements Made During the Course of the Conspiracy*

A statement made by one co-conspirator during the course and in furtherance of a conspiracy may be used against another co-conspirator because such statements are not hearsay.  Fed. R. Evid. 801(d)(2)(E); Bourjaily v. United States, 483 U.S. 171, 183 (1987).  A statement admitted under Rule 801(d)(2)(E) does not violate the Confrontation Clause, and no independent inquiry into reliability is

1  needed.  *Bourjaily*, 483 U.S. at 183-84; *United States v. Knigge*, 832

2  F.2d 1100, 1107 (9th Cir. 1987), amended 846 F.2d 591 (9th Cir.

3  1988).  Rule 801(d)(2)(E) requires a foundation that: (1) the

4  declaration was made during the life of the scheme; (2) the

5  declaration was made in furtherance of the scheme; and (3) there is,

6  including the co-schemer's declaration itself, sufficient proof of

7  the existence of the scheme and defendant's connection to it.

8  *Bourjaily*, 483 U.S. at 173, 181; *United States v. Smith*, 893 F.2d

9  1573, 1578 (9th Cir. 1990).  These foundational requirements must be

10 established by a preponderance of the evidence.  *Bourjaily*, 483 U.S.

11 at 175; *United States v. Schmit*, 881 F.2d 608, 610 (9th Cir. 1989).

12 The Court can conditionally admit co-conspirator statements subject

13 to a further foundation being laid.  *United States v. Arbelaez*, 719

14 F.2d 1453, 1460 (9th Cir. 1983); *United States v. Kenny*, 645 F.2d

15 1323, 1333-34 (9th Cir. 1981).

16      Further, because the co-conspirator exception under the Federal

17 Rules of Evidence is predicated on agency theory – not criminal

18 conspiracy law – the admission of co-conspirator statements is not

19 limited to the statements of individuals charged in the conspiracy

20 and includes statements of others in furtherance of any joint

21 venture.  *United States v. Layton*, 855 F.2d 1388, 1398 (9th Cir.

22 1988), *overruled on other grounds by* *United States v. George*, 960

23 F.2d 97 (9th Cir. 1992).

24      Defendant's criminal partners, including the CEO of Pacific

25 Hospital and doctors who participated in the scheme with him will

26 testify as to his participation in the kickback scheme at PHLB and

27 Hospital A, which is more than sufficient to establish a foundation

28 for the admission of the co-conspirator statements.

1

> **b.  *Statements Made Before Defendant Joined the Conspiracy***

2

3      A co-conspirator statement made before a defendant joined the

4 conspiracy is also admissible because it is not hearsay.  See United

5 States v. Segura-Gallegos, 41 F.3d 1266, 1272 (9th Cir. 1994)

6 ("Statements of his co-conspirators are not hearsay even if made

7 prior to the defendant joining the conspiracy."); United States v.

8 Anderson, 532 F.2d 1218, 1230 (9th Cir. 1976) ("Statements of a co-

9 conspirator are not hearsay even if made prior to the entry of the

10 conspiracy by the party against whom it is used."); United States v.

11 DiCesare, 765 F.2d 890, 900 (9th Cir.), amended on other grounds, 777

12 F.2d 543 (1985) ("'[A] conspirator who joins a pre-existing

13 conspiracy is bound by all that has gone on before in the

14 conspiracy."; United States v. Little, No. CR 08-0244 SBA, 2012 WL

15 2563796, at *5 (N.D. Cal. June 28, 2012).

16      Here, defendant joined the Pacific Hospital kickback scheme in

17 2010, which is about a decade after it began.  Drobot will testify to

18 the origins of the scheme and doctors' participation in the scheme

19 beginning around 1997.  A doctor will testify that he agreed to

20 participate in the scheme beginning in 2005 and agreed to use a sham

21 contract to disguise the kickback payments.  The doctor began

22 referring surgeries to defendant after defendant joined the scheme.

23 These statements are admissible against defendant because he actively

24 participated in the scheme, by accepting kickbacks and disguising

25 them through sham contracts, and adopted the previous acts and

26 statements of his fellow conspirators.  See United States v. Adamo,

27 882 F.2d 1218, 1230-31 (7th Cir. 1989) "[I]t is well established that

28 a defendant who joins a conspiracy '[takes] the conspiracy as he

1   found it.  When he joined and actively participated in it he adopted

2   the previous acts and declarations of his fellow co-conspirators.'

3   (alteration in original) (quoting United States v. Coe, 718 F.2d 830,

4   839 (7th Cir. 1983)).  Thus, "it is irrelevant when [defendant]

5   joined the conspiracy, so long as he joined it at some point."

6   United States v. Handlin, 366 F.3d 584, 590 (7th Cir. 2004).

7                    4.    Patient Medical Records

8        The government intends to introduce into evidence medical

9   records that were obtained from Pacific Hospital, Hospital A, and

10  other sources via legal process.  These patient files and records

11  contain evidence of the kickback arrangement.  None of the documents

12  in these patient files contain hearsay statements because they are

13  statements of medical diagnosis or treatment and describe medical

14  histories, see Fed. R. Evid. 803(4) (statements for medical diagnosis

15  or treatment not hearsay), and, in any event, the government is not

16  offering the statements in the documents for their truth but to show

17  that the documents were relied upon by the insurance companies to pay

18  the hospitals and defendant.

19       C.   **Expert Testimony**

20       If specialized knowledge will assist the trier of fact in

21  understanding the evidence or determining a fact in issue, a

22  qualified expert witness may provide testimony in the form of an

23  opinion or otherwise.  Fed. R. Evid. 702.  The Court has broad

24  discretion to determine whether to admit expert testimony.  See,

25  e.g., United States v. Cuevas, 847 F.2d 1417, 1429 (9th Cir. 1988).

26  An expert's opinion may be based on hearsay or facts not in evidence

27  where the facts or data relied upon are of the type reasonably relied

28  upon by experts in the field.  Fed. R. Evid. 703.

                                   15

Here, the government intends to call two expert witnesses during trial: Dr. Charles Rosen and Jeremy Miller.  On February 8, 2020, the government provided notice of Dr. Charles Rosen's testimony.  See Exhibit A.  As described in the disclosure letter, the government anticipates that Dr. Rosen will testify about types of spinal surgeries, the independent nature of doctors and hospitals; how hospital and doctors bill their fees, and doctors' obligations not to accept bribes and kickbacks.  On May 18, 2021, the government provided notice of Mr. Miller's specific anticipated testimony.  See Exhibit B.  As described in the disclosure letter, the government anticipates that Mr. Miller will testify about how health care transactions typically progress, from negotiations through closure and his opinion on the legitimacy of the option contract in this case, i.e., that he has never seen a contract like this in his years in practice and the contract does not appear to make any business sense.

### D.   Summaries Charts and Witnesses

Certain portions of this case involve a large number of documents, in particular, patient medical records, checks received by defendant, billing statements, and payments from insurance companies. To assist in the jury's understanding of the case, the government intends to present and introduce as exhibits charts and summaries of those materials, to save time at trial and to avoid the need to present the voluminous records themselves.

Fed. R. Evid. 1006 provides:

The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation.  The originals, or duplicates, shall be made available for examination or copying, or both, by the

1    parties at a reasonable time and place.  The court may
2    order that they be produced in court.

3    On June 21, 2021, the government emailed counsel and advised
4    that there were summary charts and the underlying data in discovery
5    and to contact the government if it needed assistance locating the
6    charts or underlying documents.  Defendant indicated that he would
7    contact the government if defendant was not able to locate the charts
8    and has not done so.

9         1.  Summary Charts

10   A chart or summary may be admitted as evidence where the
11   underlying documents are voluminous, admissible, and available for
12   inspection.  See United States v. Meyers, 847 F.2d 1408, 1411-12 (9th
13   Cir. 1988); United States v. Johnson, 594 F.2d 1253, 1255-57 (9th
14   Cir. 1979).  While the underlying documents must be admissible, they
15   need not be admitted.  See Meyers, 847 F.2d at 1412; Johnson, 594
16   F.2d at 1257 n.6.  Summary charts need not contain the defendant's
17   version of the evidence and may be given to the jury while a
18   government witness testifies concerning them.  See United States v.
19   Radseck, 718 F.2d 233, 239 (7th Cir. 1983); Barsky v. United States,
20   339 F.2d 180, 181 (9th Cir. 1964).

21   Summary exhibits, such as those the government wishes to
22   introduce into evidence, are admissible under Fed. R. Evid. 611(a)
23   and have long been recognized as an appropriate means of clarifying a
24   complicated or document-intensive case for the jury.  See United
25   States v. Silverman, 449 F.2d 1341, 1346 (2d Cir. 1971).  Fed. R.
26   Evid. 611(a) permits a court to "exercise reasonable control over the
27   mode and order of interrogating witnesses and presenting evidence so
28   as to (1) make the interrogation and presentation effective for

ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." See United States v. Gardner, 611 F.2d 770, 776 (9th Cir. 1980).

Hence, under Federal Rules of Evidence 1006 and 611(a), courts routinely admit into evidence summary charts that organize other evidence and aid the jury's understanding, as long as the underlying evidence is admissible, has been made available to the adverse party, and a witness with knowledge of the preparation of the chart or summary is available for cross-examination. See Gardner, 611 F.2d at 776; Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 53 (2d Cir. 1993); United States v. Caswell, 825 F.2d 1228, 1235-36 (8th Cir. 1987).

Summary charts also may be used by the government in opening statement. Indeed, "such charts are often employed in complex conspiracy cases to provide the jury with an outline of what the government will attempt to prove." United States v. De Peri, 778 F.2d 963, 979 (3d Cir. 1985) (approving government's use of chart); United States v. Rubino, 431 F.2d 284, 290 (6th Cir. 1970) (same).

### 2. Summary Witnesses

The investigating agent witnesses will provide summary testimony. A summary witness may properly testify about, and use a chart to summarize, evidence that has already been admitted. The court and jury are entitled to have a witness "organize and evaluate evidence which is factually complex and fragmentally revealed." United States v. Shirley, 884 F.2d 1130, 1133-34 (9th Cir. 1989) (DEA agent's testimony regarding her review of various telephone records, rental receipts, and other previously offered testimony held to be proper summary evidence, as it helped jury organize and evaluate

1  evidence; summary charts properly admitted); <u>United States v. Lemire</u>,
2  720 F.2d 1327, 1348 (D.C. Cir. 1983).

3      A summary witness may rely on the analysis of others where the
4  summary witness has sufficient experience to judge another person's
5  work and incorporate as his or her own the fact of its expertise.
6  The use of other persons in the preparation of summary evidence goes
7  to its weight, not its admissibility.  <u>See</u> <u>United States v. Soulard</u>,
8  730 F.2d 1292, 1299 (9th Cir. 1984); <u>Diamond Shamrock Corp. v.</u>
9  <u>Lumbermens Mutual Casualty Co.</u>, 466 F.2d 722, 727 (7th Cir. 1972)
10 ("It is not necessary . . . that every person who assisted in the
11 preparation of the original records or the summaries be brought to
12 the witness stand.").

13     **E.   Authentication and Foundation**

14          **1.   <u>Fed. R. Evid. 901</u>**

15     Federal Rule of Evidence 901(a) provides that "[t]he requirement
16 of authentication or identification as a condition precedent to
17 admissibility is satisfied by evidence sufficient to support a
18 finding that the matter in question is what its proponent claims."
19 Fed. R. Evid. 901(a).  Under Rule 901(a), evidence should be
20 admitted, despite any challenge, once the government makes a prima
21 facie showing of authenticity or identification so "that a reasonable
22 juror could find in favor of authenticity or identification . . .
23 [because] the probative force of the evidence offered is, ultimately,
24 an issue for the jury."  <u>United States v. Chu Kong Yin</u>, 935 F.2d 990,
25 996 (9th Cir. 1991) (citations and internal quotation marks omitted);
26 <u>see also</u> <u>United States v. Black</u>, 767 F.2d 1334, 1342 (9th Cir. 1985).
27 Once the government meets this burden, "[t]he credibility or

28

probative force of the evidence offered is, ultimately, an issue for the jury." Black, 767 F.2d at 1342.

The government need not establish all links in the chain of custody of an item or call all persons who were in a position to come into contact with it. See Gallego v. United States, 276 F.2d 914, 917 (9th Cir. 1960). Alleged gaps in the chain of custody go to the weight of the evidence rather than to its admissibility. See United States v. Taylor, 716 F.2d 701, 711 (9th Cir. 1983). A duplicate is admissible to the same extent as the original, unless there is a genuine question as to the authenticity of the original or it would be unfair under the circumstances to admit the duplicate in lieu of the original. See Fed. R. Evid. 1003; United States v. Smith, 893 F.2d 1573, 1579 (9th Cir. 1990).

                    2.   Written and Electronic Communications

The parties have not stipulated to the foundation, authenticity, and admission of any written or electronic communications. As with other types of communication, without a stipulation by the parties, the admissibility of emails is governed by a collection of evidentiary rules. Lorraine v. Markel Am. Ins. Co., 241 F.R.D. 534, 538 (D. Md. 2007) (listing rules).

To authenticate an email message, the proponent must produce "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). This can be accomplished by testimony of a witness with knowledge, and/or by distinctive characteristics in the email. Fed. R. Evid. 901(b)(1) and 901(b)(4); see United States v. Siddiqui, 235 F.3d 1318, 1322-23 (11th Cir. 2000) (authentication of email by testimony that message bore defendant's email address; described defendant's conduct in

intimate detail; referred to author using defendant's nickname; and was followed by telephone call from defendant regarding content of email).

### 3.   Business Records

The government intends to offer into evidence business records from banks, insurance companies, Pacific Hospital, and Hospital A. Rule 902(11) permits the admission of self-authenticating business records.  Specifically, the Rule dictates that certified domestic records of a regularly conducted activity "are self-authenticating" and therefore "require no extrinsic evidence of authenticity in order to be admitted."  Fed. R. Evid. 902(11).  To qualify under this provision, the records in question must be "[t]he original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person."  Id.  The Rule also requires that the proponent of such evidence provide an adverse party, prior to trial, with "reasonable written notice of the intent to offer the record -- and . . . make the record and certification available for inspection -- so that the party has a fair opportunity to challenge them."  Id.

Under Rule 803(6)(A)-(C), a business record is admissible if: (A) "the record was made at or near the time by -- or from information transmitted by -- someone with knowledge"; (B) "the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit"; and (C) "making the record was a regular practice of the activity."  Fed. R. Evid. 806(A)-(C).  Moreover, admitting business records under Rule 902(11) without testimony from a custodian of records does not violate a defendant's rights to confront witnesses

because business records are not testimonial in nature.  <u>See</u>
<u>Bullcoming v. New Mexico</u>, 564 U.S. 647, 659 n.6 (2011) ("Elaborating
on the purpose for which a 'testimonial report' is created, we
observed in [<u>Melendez-Diaz v. Massachusetts</u>, 557 U.S. 305 (2009)]
that business and public records 'are generally admissible absent
confrontation . . . because -- having been created for the
administration of an entity's affairs and not for the purpose of
establishing or proving some fact at trial -- they are not
testimonial.'" (quoting <u>Melendez-Diaz</u>, 557 U.S. at 324)).

On July 13, 2021, the government disclosed its exhibit list to
defendant and provided defendant with electronic copies of a full set
of the government's trial exhibits via the government's file-sharing
system, including the following: (1) bank records, (2) patient
medical records and payment records, (3) Department of Labor
insurance records, and (4) California Secretary of State records.
The government previously produced all of the records and
accompanying custodian-of-record declarations in discovery, and the
government will have the declarations available at trial for the
Court's inspection.

**F.   Proof of the Content of Documents**

Under the best evidence rule, "[a]n original writing, recording,
or photograph is required in order to prove its content unless these
rules or a federal statute provides otherwise."  Fed. R. Evid. 1002.
The best evidence rule applies when secondary evidence, either oral
or written, is offered to prove the content of a writing without
producing the physical item itself.  <u>See United States v. Bennett</u>,
363 F.3d 947, 953 (9th Cir. 2004); <u>United States v. Diaz-Lopez</u>, 625

1  F.3d 1198, 1201-03 (9th Cir. 2010).  The Rule is subject to the

2  exceptions set forth in Rule 1004.

3      There are limits to the application of the Rule.  As the

4  commentary to Rule 1002 notes, the Rule is inapplicable and does not

5  preclude an expert from giving an opinion based on the contents of a

6  recording or writing not in evidence.  "It should be noted, however,

7  that Rule 703 . . . allows an expert to give an opinion based on

8  matters not in evidence and the present rule must be read as being

9  limited accordingly in its application."  Moreover, a witness's

10  statement as to his understanding or recollection of the content of a

11  document or recording for purposes of describing his subsequent

12  actions do not implicate the rule as his statement is not being

13  offered to prove the true content of the document but rather offered

14  to explain his subsequent action.  The purpose of the Rule is to

15  ensure that when a party seeks to prove statements in a document or

16  recording that it is proved through the most reliable means.  That

17  interest is not implicated when the content of a document is being

18  offered for state of mind purposes.  What matters is not what the

19  document actually said but what the witness believed or understood it

20  said and what he did or did not do in response to it.  See, e.g.,

21  United States v. Kellar, 394 F. App'x 158, 164 n.5 (5th Cir. 2010)

22  ("Philip's argument that the district court violated the 'best

23  evidence rule' of Federal Rule of Evidence 1002, by not admitting the

24  letters themselves is unavailing.  Rule 1002 applies when a party

25  wishes to 'prove the content of a writing,' and in this case, Philip

26  wishes to introduce the writing to demonstrate its effect on his

27  subjective state of mind."); Weinstein's Federal Evidence

28

1  § 1002.05[1] (2d ed. 2001) ("The rule is inapplicable when content is
2  not at issue.").

3  **G.  Cross Examination**

4  The scope of a cross-examination is within the discretion of the
5  trial court.  Fed R. Evid. 611(b).  It should be limited to the
6  subject matter of the direct examination and matters affecting the
7  credibility of the witness.  The trial court may, in the exercise of
8  its discretion, permit inquiry into additional matters as if on
9  direct examination.  Fed. R. Evid. 611(b).

10  The government expects defendant to testify at trial.  A
11  defendant who testifies at trial may be cross-examined as to all
12  matters reasonably related to the issues he puts in dispute during
13  cross-examination.  United States v. Miranda-Uriarte, 649 F.2d 1345,
14  1353-54 (9th Cir. 1981).  A defendant has no right to avoid cross-
15  examination on matters which call into question his claim of
16  innocence.  Id.  Moreover, a defendant who testifies at trial waives
17  his Fifth Amendment privilege and may be cross-examined on matters
18  made relevant by his direct testimony.  United States v. Black, 767
19  F.2d 1334, 1341 (9th Cir. 1985).

20  The scope of defendant's waiver is coextensive with the scope of
21  relevant cross-examination.  United States v. Cuozzo, 962 F.2d 945,
22  948 (9th Cir. 1992); Black, 767 F.2d 1334, 1341 (9th Cir. 1985).  The
23  extent of the waiver is determined by whether the question reasonably
24  relates to subjects covered by defendant's direct testimony.  United
25  States v. Hearst, 563 F.2d 1331, 1340 (9th Cir. 1977).  Federal Rule
26  of Evidence 608(b) provides that:

27      [E]xtrinsic evidence is not admissible to prove specific
        instances of a witness's conduct in order to attack or
28      support the witness's character for truthfulness.  But the

24

court may, on cross-examination, allow them to be inquired
into if they are probative of the character for
truthfulness or untruthfulness of (1) the witness; or
(2) another witness whose character the witness being
cross-examined has testified about.

## H.   Character Evidence

Defendant may call character witnesses to testify on his behalf.
The Supreme Court has recognized that character evidence –
particularly cumulative character evidence – has weak probative value
and great potential to confuse the issues and prejudice the jury.
See Michelson v. United States, 335 U.S. 469, 480, 486 (1948).  The
Court has thus given trial courts wide discretion to limit the
presentation of character evidence.  Id.

In addition, the form of the proffered evidence must be proper.
Federal Rule of Evidence 405(a) sets forth the sole methods for which
character evidence may be introduced.  It specifically states that
where evidence of a character trait is admissible, proof may be made
in two ways: (1) by testimony as to reputation and (2) by testimony
as to opinion.  Character witnesses called by the defendant may not
testify about specific acts demonstrating a particular trait or other
information acquired only by personal observation and interaction
with the defendant; the witness must be limited to summarizing the
reputation of the defendant as known in the community.  See
Michelson, 335 U.S. at 477.  Thus, defendant may not introduce
specific instances of his good conduct through the testimony of
others.  Id. ("The witness may not testify about defendant's specific
acts or courses of conduct or his possession of a particular
disposition or of benign mental or moral traits.").

1     On cross-examination of a defendant's character witness,
2  however, the government may inquire into specific instances of a
3  defendant's past conduct relevant to the character trait at issue.
4  See Fed. R. Evid. 405(a).  In particular, a defendant's character
5  witnesses may be cross-examined about their knowledge of the
6  defendant's past crimes, wrongful acts, and arrests.  See Michelson,
7  335 U.S. at 482-83.  The only prerequisite is that there must be a
8  good faith basis that the incidents inquired about are relevant to
9  the character trait at issue.  See United States v. McCollom, 664
10  F.2d 56, 58 (5th Cir. 1981).
11     Here, several of the witnesses identified by defendant appear to
12  be character witnesses.

13  **I.    Impeachment by Evidence of a Criminal Conviction**

14     Federal Rule of Evidence 609 permits a party to attack a
15  witness's character for truthfulness by evidence of a criminal
16  conviction; however, if the witness's criminal conviction is more
17  than 10 years old, the party must give the "adverse party reasonable
18  written notice of the intent to use it so that the party has a fair
19  opportunity to contest its use."  FRE 609(b)(2).  Here, one of
20  patient victims identified in the Second Superseding Indictment has a
21  prior conviction more than 10 years old.  The patient victim's rap
22  sheet was produced to defendant in discovery.  Defendant, however,
23  has failed to provide notice of his intent to attack the witness by
24  evidence of the conviction and, therefore, may not ask the witness
25  questions related to the old conviction.

26  **J.    Pecuniary Gain**

27     The government intends to show that defendant made money during
28  the course of the kickback scheme, which is admissible to show his

26

1   participation in the scheme.  <u>See</u> <u>United States v. Saniti</u>, 604 F.2d

2   603, 604 (9th Cir. 1979).  The receipt and use of money derived from

3   the scheme is also circumstantial evidence of his role in the scheme.

4   <u>See</u> <u>United States v. Booth</u>, 309 F.3d 566, 574 (9th Cir. 2002).

5   **VIII.      CONCLUSION**

6       The government respectfully requests permission to file

7   additional trial memoranda if necessary.

8    Dated: July 22, 2021              Respectfully submitted,

9                                      TRACY L. WILKISON
                                       Acting United States Attorney
10
                                       SCOTT M. GARRINGER
11                                     Assistant United States Attorney
                                       Chief, Criminal Division
12

13                                         /s/
                                       _____
14                                     JOSEPH MCNALLY
                                       JEFF MITCHELL
15                                     Assistant United States Attorney

16                                     Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

17

18

19

20

21

22

23

24

25

26

27

28